### Kniss, Appellant, v. Borough of Duquesne.

*Municipalities—Streets—Dedication—Subsequently incorporated borough—Acceptance—Evidence—User — Negligence — Failure to repair.*

1. In an action by a widow against a borough to recover damages.

for the death of her husband, alleged to have been caused by the defective condition of a road which plaintiff contended was a public street, the question of defendant's obligation to maintain the highway is for the jury and a verdict for the plaintiff is sustainable where the substantially uncontradicted evidence of the plaintiff is sufficient to prove that the road in question was plotted by the property owners on a plan of partition of lands, and that subsequently it was graded by such owners and opened to public use to facilitate the sale of the property, as part of a continuous thoroughfare from the opened streets of the borough to the adjoining townships; that this highway was used by the public generally and continuously, and that after the incorporation of the borough every street commissioner had done work on the road; and the only one having an interest in the real estate who testified stated that after opening the road he used it "the same as the public did."

2. Where in such case the evidence is sufficient to justify the conclusion that the original owners when they opened the road intended to set it apart for public use, the fact that there was no municipal corporation then existing will not defeat the dedication, for, upon such a corporation coming into existence, it could take advantage of the situation.

Argued Oct. 16, 1916. Appeal, No. 136, Oct. T., 1916, by plaintiff, from judgment of C. P. Allegheny Co., Oct. T., 1914, No. 2276, for defendant non obstante veredicto in case of Rosa Kniss v. Borough of Duquesne. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before MACFARLANE, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $5,096, which the court subsequently set aside and entered judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was in entering judgment for the defendant n. o. v.

*George C. Bradshaw,* with him *A. C. Purdy,* for appellant, cited: Ackerman v. City of Williamsport, 227 Pa.

591; Kennedy v. City of Williamsport, 11 Pa. Superior Ct. 91; Washington Borough v. Steiner, 25 Pa. Superior Ct. 392.

*W. M. Ewing,* for appellee, cited: Commonwealth v. Llewellyn, 14 Pa. Superior Ct. 214; Silva v. Spangler, 43 Pac. Repr. 617; Mayor & City Council of Baltimore v. Broumel, 86 Md. 153; Russel v. Chicago & Milwaukee Electric Ry. Co. et al., 205 Ill. 155; Steel et ux. v. Huntington Borough et al., 191 Pa. 627; Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Weiss v. Borough of South Bethlehem, 136 Pa. 294; Washington Female Seminary v. Washington Borough, 18 Pa. Superior Ct. 555; Grant v. Dickson City Borough, 235 Pa. 536; Downing v. Coatesville Borough, 214 Pa. 291.

OPINION BY MR. JUSTICE MOSCHZISKER, January 8, 1917:

On March 6, 1914, the plaintiff's husband lost his life by the overturn of a wagon which he was driving along what was claimed to be a public street in the Borough of Duquesne, Allegheny County, this State; plaintiff brought the present action, averring that the borough had negligently failed to maintain its roadway in a condition safe for travel, and recovered a verdict; the court below entered judgment n. o. v. in favor of the defendant, upon the ground that the evidence was insufficient to show a dedication and acceptance of the alleged highway; the plaintiff has appealed.

The substantially uncontradicted evidence adduced by the plaintiff was sufficient to prove the following facts: The western part of the Borough of Duquesne is largely made up of land which at one time was a farm belonging to Robert Oliver, now deceased; in 1886, this farm was partitioned between the Oliver heirs, by a division into large purparts separated by open ways, or unnamed streets, properly drawn on the plan of partition; this plan was duly recorded, and one of the ways indicated

thereon corresponds with what is here called Meadow street, upon which the accident happened, except that the present street is ten feet narrower than that shown on the partition plan, five feet having been taken off each side in some unexplained manner; in 1889 an actual roadway was constructed upon what is now the part of Meadow street with which we are here concerned, the grading being done by one of the Oliver heirs under agreement with the others; in the same year, another roadway, called William street, was constructed in like manner, the latter not being shown on the plan of 1886; both William and Meadow streets run out of the borough in a northwesterly direction, but (the trend of the former being mostly toward the west and of the latter toward the north), about 100 feet within the borough limits, they unite with one another, and have the aspect of one unbroken way with a bend at the junctional point; the upper, or southeasterly, end of William street connects with a series of open highways in the borough, while Meadow street, from its point of union with William street, covering the before-mentioned one hundred feet, leads northwestwardly out of the borough into a thoroughfare now called Oliver avenue, but formerly known as Township road, running southwestwardly into the open country; William street and the part of Meadow street here in question are popularly designated by the name of the former, and this united highway has been used by the public, generally and continuously, for travel both into and out of the borough, since 1889; it was not paved at the time of the accident, but one of the witnesses for the defendant described it as "a very fair mud street," while another said it was "a pretty safe road to drive on," adding that he "had seen lots of people drive on it, winter and summer"; the plaintiff's husband was killed when his wagon fell over an unguarded declivity at the easterly side of Meadow street, near its point of junction with William street, or between that point and Oliver avenue; this part of Meadow street is

divided from the remaining portion thereof shown on the partition plan (the latter running in a southeasterly direction from the aforesaid point of junction with William street) by a hill which is alleged incapable of being graded into a useful highway, but on the other side of this hill Meadow street has been paved and sewered; the borough was incorporated in 1891, and there was testimony to the effect that every street commissioner from that time on worked upon the roadway of both William and Meadow streets in the general locality of the accident, but there was nothing to show that this was done by direction of the borough council or that money was specifically appropriated by that body to pay therefor; finally, there was evidence that the streets in question were graded by the Oliver heirs in 1889, to help bring about the sale of their property, and that certain sales did take place after 1896, in which year other plans of the respective heirs were made and duly filed of record showing both William and Meadow streets as of their present width and otherwise as before described. While William Oliver was the only heir called as a witness, he testified that "the street" [meaning thereby the combination of William and Meadow streets] had been traveled by the public continuously since it was originally graded in 1889; furthermore, that it was then opened for public use and he "drove over it the same as the public did," that is to say, his use of the roadway was not a private one, but in common with the rest of the public.

The court below took the view that there was not sufficient evidence to show a dedication and acceptance of the street prior to the date of the incorporation of the borough in 1891, and, therefore, held that the plaintiff could not recover; but, in making this ruling, the learned court seems to have entirely overlooked the fact of the long continued user of the street by the public and the legal effect thereof, under the law as established in this State.

Our latest case upon the subject in hand is Ackerman

v. Williamsport, 227 Pa. 591, 594, which, like the one at bar, was an action to recover for personal injuries occasioned by the defective condition of an alleged public highway, and where the principal defense consisted in the contention that there was not sufficient evidence to show a dedication and acceptance of the street involved. We there said: "Where dedication is once established, it becomes simply a question of acceptance by the public; either can be established by proof of user. As against the owner of the soil, who would reassert his right in the way, an adverse user for the statutory period must be shown; but as against a municipality which disclaims all duty in connection with the way, the dedication by the owner not being in dispute, acceptance by the municipality may be shown by proof of public use for a much shorter period.......In the present case the user was continued and uninterrupted for more than thirty years; a conclusive presumption arises that the street was originally dedicated, and the owners of the soil are precluded from asserting any other right therein than what is common to the public. The same evidence which concludes the owners and establishes a dedication is more than sufficient to warrant a presumption of acceptance of the way by the municipality."

When the principles just stated are kept in mind and applied to the facts which the evidence produced by the plaintiff tended to establish, it becomes apparent that the verdict rendered by the jury was sustainable upon the theory of an accepted dedication; but, since the defendant cites other authorities, including some of our own cases, to sustain its contention to the contrary, we shall give further consideration to the relevant rules of law which must guide us in determining the alleged public character of the road upon which the accident happened.

To begin with, the initial question, as to whether or not there had been a dedication, was one to be determined upon the evidence in the case, and it depended largely upon the intention of the Oliver heirs as shown

by their actions in plotting and laying out the road in question, and their subsequent conduct in connection therewith. "Dedications have been established in every conceivable way by which the intention of the party can be manifested.......The intention may......be established by parol evidence of acts or declarations which show an assent on the part of the owner of the land that the land should be used for public purposes.......Where the question is as to an intent on the part of the owner to dedicate, user by the public for a period less than that limiting real actions is important as evidence of such intention, and as one of the facts from which it may be inferred.......No dedication is complete until acceptance by the public; but in the absence of a statutory restriction or provision to the contrary, the acceptance may be by the public at large, and need not be by...... municipal or corporate authorities acting on behalf of the public.......In the absence of a statutory restriction or prohibition, it is generally held that acceptance by the public may be shown by long continued user without any acts or conduct on behalf of the municipal corporation. Whether the user by the public is of such a nature as to constitute an acceptance is a question of fact, depending upon the circumstances of the particular case": 3 Dillon on Municipal Corporations (5th Ed.), Secs. 1079, 1081, 1086. "Generally an intent to dedicate land for a street or highway may be inferred where the owner suffers it to be used by the public for that purpose for a great length of time.......Acceptance of a dedication......may be implied from long user of the way by the public as of right," and this "has been held sufficient ......even where the effect is......to hold the municipality......responsible for injuries resulting from failure to repair.......User may always be considered ......in connection with acts of the public authorities which indicate an intention to accept.......The length of time necessary to raise a presumption of dedication from user depends on the circumstances of each particu-

lar case.......The general rule seems to be that it is the intention of the proprietor of the land, rather than the time of sufferance, which must determine the fact of dedication, and hence proof of user for a period much shorter than that required to show title by prescription may be sufficient. Such use, however, ought to be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment": 13 R. C. L., Secs. 24, 25, 29. "In such cases the owner's intention to dedicate is manifested either by his affirmative acts whereby the public use is invited and his subsequent acquiescence in such use, or by his express assent to or deliberate allowance of the use, or merely by his acquiescence therein; but, generally, the law regards the user as mere evidence, and, accordingly, where it is sought to establish an intention to dedicate from the fact of user, all the circumstances have to be looked at to see whether they disclose such an intention.......The weight of authority is to the effect that acceptance may be predicated on user, and the general current of modern authorities sustains the proposition that dedication may be accepted merely by long continued public user, without any formal act of acceptance, even to the extent of charging the public authorities with liability for failure to keep in repair": 8 R. C. L. 16, 25. See also Secs. 18-20, 22-24 and 27-29, for useful discussion upon the subject in hand, containing statements of law consistent with the above quoted excerpts. Finally, see Sec. 30, which treats of the distinction between those cases where a prescriptive right in a highway is claimed, requiring proof of twenty-one years' exclusive and adverse user by the public, and the other class of cases, in which the effort is to establish dedication and acceptance, where the proof of user may be for a less period; in this connection, see opinion by President Judge RICE in Washington Borough v. Steiner, 25 Pa. Superior Ct. 392, 399. When the question of the real character of an alleged highway is collaterally

raised, "as in an action for its negligent maintenance," that it actually is an open, public way is sufficiently shown, "so as to shift the burden of proof," by the facts that "it has been open and the public permitted or invited to use it for travel": 2 Shearman & Redfield on Negligence (6th Ed.), Sec. 334.

It will be observed that the above quotations sustain the law as laid down by this court in Ackerman v. Williamsport, supra, and our attention has not been called to any Pennsylvania authority in conflict therewith. The report in Steel v. Huntingdon Borough, 191 Pa. 627, indicates that the plaintiff depended upon proof of municipal acts of some sort to show acceptance, and not, as here, upon long continued user; hence, all we there said must be considered with this distinction in mind. Moreover, the case last cited must now be read in connection with Ackerman v. Williamsport, supra, and Grant v. Dickson City Borough, 235 Pa. 536, where we again recognize that the acceptance of a dedication may be shown by user of long duration. Weiss v. South Bethlehem Borough, 136 Pa. 294, explaining Comm. v. Cole, 26 Pa. 187, in no wise conflicts with the law as announced in Ackerman v. Williamsport, supra. Steel v. Huntingdon Borough, supra, and Grant v. Dickson City Borough, supra, both state that proof of repairs made by a street commissioner upon an apparently open highway, even when accompanied by municipal payment of expenses thus incurred, is not, per se, sufficient, but that, to prove acceptance of an alleged dedication, there must be also proof that the municipal council had ordered or, at the time, was aware it was in fact paying for the particular repairs in question; but in each of those cases the plaintiff depended upon implied acceptance through municipal acts and not, as here, upon long continued public use of the street. In the present case, although the evidence concerning the work done upon the roadway by the various commissioners may not have been sufficient in itself to show acceptance of the alleged

dedication, yet in connection with the proof of user, the continued making of repairs by the successive street commissioners was some evidence for the jury to consider in determining whether or not the public generally looked upon and treated this alleged street as an open, public highway; but, of course, in this class of cases, the evidence depended upon to show the character of the highway, when taken as a whole, must be clear and convincing in order to sustain a verdict against the municipality: Verona Borough v. Allegheny Valley R. R., 152 Pa. 368. If, however, the evidence be sufficient to justify a conclusion that the original owners, when they opened the road, intended to set it apart for public use (as it is in the present case), then the fact that, at the place in question, there was no municipal corporation then existent, will not defeat the dedication, for, upon such corporation coming into existence, it could take advantage of the situation: 3 Dillon on Municipal Corporations (5th Ed.), Sec. 1086; Klinkener v. McKeesport School Directors, 11 Pa. 444, 449.

There is only one assignment of error, and that complains of the action of the court below in entering judgment for the defendant n. o. v.; hence, neither the manner in which the case was conducted at trial nor the form in which it was finally submitted to the jury, is before us for review at the present time. On the record as brought here, the sole, ultimate question upon which we have to pass is merely this: under the law, was there sufficient evidence to support the verdict rendered by the jury? As already indicated, this must be answered in the affirmative, because, on the controlling points discussed in this opinion, i. e., dedication and acceptance, the plaintiff made out a prima facie case and the defendant presented no evidence sufficient to overcome it.

The assignment of error is sustained, the judgment reversed and the record remitted to the court below, with directions to enter judgment on the verdict in favor of the plaintiff.