## Washington Borough *v.* Steiner, Appellant.

*Boroughs—Road law—Resolutions—Ordinance.*

A mere resolution of a borough council adopting a plan of a borough upon which the streets are represented, will not have the effect of widening or narrowing a street where the existing lines do not conform to those laid down on the plot. The accomplishment of that object requires legislative action, and, although it may be in form of a resolution the essentials to the validity of an ordinance must be observed. Such a resolution without more will not cast on one, whose dwelling has stood in the same place for years before the resolution was adopted, and probably before the borough was created, the burden of proving that when it was built it did not encroach upon the existing highway.

*Road law—Dedication—Adverse user.*

When a dedication to public use, and the opening of a street for public travel by the owner are followed by its actual use by the public as a highway, the right in the public may become complete and absolute within a much shorter period than twenty-one years ; but when the right is dependent upon adverse user alone, it does not become complete until the expiration of that period. The use which will establish such a right must be defined, uniform, adverse, and under claim of right, and must have continued for twenty-one years.

Where the right to a public highway is acquired by adverse user, an important element in determining the width thereof is the recognition of the limits of the way by the owners whose lands front thereon, as indicated by the monuments and fences which they themselves place upon the ground, and the lines which they fix for the same in making conveyance of their property.

Where a house has stood from fifty to one hundred years on a lot abutting on a street in a borough, the borough authorities cannot compel the owner in rebuilding the front to recede to a line claimed by the borough to be the proper line of the street, where there is no evidence whatever to show that the public by adverse, continuous and exclusive use had acquired title in the street to the line designated by the borough.

Argued Nov. 11, 1903. Appeal, No. 57, Oct. T., 1903, by

defendants, from decree of C. P. Lancaster Co., Equity Docket No. 3, p. 335, on bill in equity in case of Washington Borough v. Albert and Margaret Steiner. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Bill in equity for an injunction.

LIVINGSTON, P. J., found the facts to be as follows:

The borough of Washington, a corporation located in this county, was duly incorporated by the act of assembly, approved April 13, 1827, P. L. 263, -and its supplements, and subsequently, on December 15, 1873, in pursuance of proceedings in the court of quarter sessions of Lancaster county, it became subject to the restrictions, and possessed of the powers and privileges conferred by an act regulating boroughs, approved April 3, 1851, P. L. 320. By section 2 of this last mentioned act, it was, through its corporate officers, given power to " survey, lay out, enact and ordain such roads, streets, lanes, alleys, courts and common sewers as they may deem necessary, and to provide for, enact and ordain the widening and straightening of the same; to prohibit the erection or construction of any building, or work, excavation, or other obstruction, to the opening, widening, straightening and convenient use thereof." In section 27, it was further provided that it should not " be lawful for any owner or owners, occupier or occupiers, of lands, buildings or other improvements, to erect any buildings or make any improvements within the lines of the roads, streets," and so forth, " laid out, widened, or straightened, or ordained to be laid out, widened or straightened, after due notice thereof." The borough councils, by ordinance adopted September 2, 1874, fixed the line of lots on Water street, in said borough, at twelve feet from the line of the curb of the said street; and on July 11, 1879, adopted, as the official survey of the borough, a plan made from original surveys by E. W. Goerke. Subsequently, in 1885, a controversy arose concerning the line of said Water street, wherein Benjamin K. Shultz, et al., were the plaintiffs, and the borough of Washington was the defendant. It was therein established, by a master in equity, and afterwards by a decree of this court, that the line, as fixed by the said plan, was the true one; but an examination

of these proceedings indicates that the decree was entered by an agreement between the parties, and, in our judgment, we do not, therefore, think that it concludes any one to this present suit.

By an ordinance of May 19, 1879, relating to the erection of buildings in said borough, it was provided, inter alia, that it should be the duty of every owner or builder, previous to erecting the foundation wall of any building, or re-erecting a building upon any foundation wall now existing, or fencing upon the line of any road, street, lane, or alley, to make personal application to the borough regulator, who, upon such application, should proceed to regulate, mark and set out the proper line of said building, wall, and so forth, and that, only after such application, should a permit be issued. This ordinance was, however, not complied with by the defendants before beginning the improvements which are the subject of this controversy. On the contrary, they positively refused to obey it, even after notice.

Margaret Steiner is the owner of a lot of ground upon which is erected a two-story frame dwelling house, situated on the east side of Water street, in the borough of Washington, and she was the owner of said property for some time prior to the filing of this bill. Her lot begins on Water street, at a point 184 feet south of Penn street, and it extends south along said street 60 feet towards the southern boundary of the borough. There was a house built upon this lot for at least fifty years, and it consisted of a frame structure, with the roof extending about three feet beyond the front wall and covering a balcony on the second floor and an open porch on the first. Under the porch were foundation walls, but they were built partly along the sides westward, and not along any portion of the front. The house, perhaps through time, seems to have become in bad condition, and the defendants, about September 19, 1900, proceeded to repair it. The line of the street, as fixed by the Goerke plan, ran a short distance in front of the main wall, and consequently under the eaves and over the porch. The Steiners extended the side walls to a point about three feet beyond the original front. They then put foundation walls along the whole front, connecting them with the side foundations, and then placed a new frame front at this place. They made no

cellar under this new part.  The effect of all this was to add that much space to the front rooms of the house, and, by so doing, the whole front of the house was extended two feet ten and one half inches beyond the line as fixed by the Goerke plan. After the repairs were made the roof was about two and one half inches further in than it formerly was and, with this exception, Mr. Steiner, in his testimony, states what was done in these words : " We just simply shut our own porch up that was under the main roof."

When the Goerke plan was made, and before its adoption, every property owner, or his representative, was consulted concerning the old lines and the plan was made in accordance with the information thus acquired.  None of the houses built along the street were, at that time, over the lines as then established ; and, in fact, none of them are so built at the present time, except that of Mrs. Steiner, the defendant.  Before the repairs were commenced, the regulator of the borough hearing of the proposed improvements and also that the defendants contemplated building, as they have done, over the line as established by the borough plan, called upon them and read to them the ordinance which we have quoted in part above.  He was, however, informed by them that they proposed to build as they subsequently did build, and he then told them that they had no such right.  To this Mrs. Stiener replied: " We are going to go ahead and build.  If you want to stop us, you have got to take out an injunction."

*B. F. Davis*, for appellant.

*W. C. Douglas, Jr.*, of *Given & Douglas*, and *W. U. Hensel*, for appellee.

OPINION BY RICE, P. J., July 28, 1904 :

At the time of filing the bill and for some years prior thereto Margaret Steiner, one of the defendants, was the owner of a lot of ground upon which was erected a two story frame dwelling house situated on the east side of Water street in the borough of Washington.  The roof of the house extended three or four feet beyond the line of the front foundation wall and covered a balcony and underneath it a porch or veranda, the

floors of which were laid on the same joists that supported the floors of the living part of the house.  The house, as thus constructed, had stood for fifty years and more—one hundred years, as believed by some—when, being out of repair, the defendant repaired and altered it by cutting off about fourteen inches of the joists and a corresponding part of the roof, taking out the front studding and siding, and putting in a new front, thus inclosing in the living rooms what had before been parts of the balcony and porch.   Underneath the front she put in a new foundation wall, connecting it with the side foundations that had previously supported the ends of the porch and balcony.   While the work was in progress the borough filed this bill in equity, and obtained a preliminary injunction.   We make no point of the fact that the bill was not filed until after the work was begun, for it was satisfactorily proved that the defendants had prior warning not to proceed.   After final hearing upon bill and answer and testimony—the work having been practically completed when the preliminary injunction was served and fully completed when the case came on for final hearing—the court decreed as follows: " That a mandatory injunction or order shall issue, directing and compelling the said Albert and Margaret Steiner, defendants, to move that part of the house which they have erected, contrary to law, over and beyond the line of Water or Front street, from the place where said house now is, and make it conform to the line as set forth upon the Goerke borough plan," etc.

It appears that Dr. E. W. Goerke, a civil engineer, was employed by the town council to make a plan of the borough, and that at a meeting of council held on June 11, 1879, he submitted his report, whereupon it was resolved that the plan as presented by him " be the official plan of the borough."   On the 28th of the same month, at a special meeting of council called by the chief burgess for the purpose, a motion that Dr. Goerke's plan be adopted was carried unanimously.   This is the map or plan referred to in the decree now under review. According to that plan, as explained by the oral testimony, the defendant's house now projects into the street two feet ten and one half inches, this being two and one half inches less than the roof, balcony and porch extended towards or into the street before the alterations and repairs were made.   So far as the

use of the street by the public is concerned, the alleged encroachment is not greater, but slightly less, than that which had existed before.

It cannot be successfully contended that a mere resolution of a borough council adopting a plan of the borough upon which the streets are represented will have the effect of widening or narrowing a street where the existing lines do not conform to those laid down on the plot. The accomplishment of that object requires legislative action, and, although it may be in the form of a resolution, the essentials to the validity of an ordinance must be observed. See Buchanan v. Beaver Boro., 171 Pa. 567. The law was thus stated by Justice FELL in Howard v. Borough of Olyphant, 181 Pa. 191 : " While legislation by borough councils may be by ordinance or resolution, the requirements which are essential to the validity of an ordinance must be observed in the passage, approval, recording and publication of resolutions where the action of council is legislative." As it is not claimed that these requirements were observed with regard to the resolution of June, 1879, and the plan to which it relates, it may safely be assumed that it did not have the effect of changing the lines of Water street and of making any part of the lot in question a part of the highway which was not included in it before. Indeed, that effect is not strenuously claimed for it by the plaintiff's council. What they asked the court to find was, that the plan was merely an ascertainment of the line of the street at this point. The learned judge distinctly finds that the borough had not sought to change the lines of the street as established. Hence it seems unnecessary to discuss the question, suggested in his opinion, as to the right of a borough, under paragraph five, sec. 27, of the act of 1851, to interfere with the owner's use of his land abutting on a street, after the street has been widened on the official plot so as to include it, but before an opening ordinance has been passed or the damages have been assessed. It being conceded that there was no intention to widen the street, that question does not arise.

But the learned judge goes on to say that the borough had a right, by its surveyor, to establish this line as the line of the street, and, prima facie, the survey made was the right one and correctly indicated the boundaries of the street ; its order was an

assertion that the lines of the street were such as they appeared to be upon the plan which it caused to be prepared, and fences and other structures within such limits were, presumptively, obstructions and encroachments. The only Pennsylvania decision cited in support of this proposition is Kopf v. Utter, 101 Pa. 27, where the question involved was as to the location of the west line of East street in the borough of Warren " as made by the commissioners appointed to lay out said borough by the act of April 18, 1795." Justice GORDON said: "In 1867 the borough authorities, by their surveyor, endeavored to ascertain and establish this line. This they had undoubted right to do, and prima facie their survey was the right one, and correctly indicated the boundaries of the street." These remarks must be read in connection with the facts of the case to which they relate. It appeared from the report that in 1867 the borough authorities finding the streets of the borough irregular and uncertain employed an engineer to locate two streets and mark the corners of intersecting streets ; that in making the survey " they took one landmark, one of the old monuments which was fixed in 1795, as the starting point, and were governed then by the courses and distances as laid down in the official plot ; " and that in 1873, pursuant to this survey, East street was marked by permanent stones, and an ordinance passed requiring all persons erecting new buildings or fences to conform to the street line as ascertained by this official survey. Two things are to be noticed which distinguish the case from the present: first the action of the borough re-establishing the line of the street was by ordinance ; second, in locating it the borough followed the line of the street as laid out by the commissioners in their original plot of the town in 1795. We hesitate to conclude that the court intended to lay down a general rule, which would require the court to hold, in a case like the present, that a mere resolution of a borough council, without more, declaring a plan prepared by its employee to be the official plan of the borough, is all that is required to cast on one, whose dwelling had stood in the same place for years before the resolution was adopted, probably before the borough was created, the burden of proving that when it was built it did not encroach upon the existing highway. The fact that the defendant acquired her title after the adoption of the resolution

cannot affect the question.   The actual possession and the right of possession which were in Emanuel Fishel, the owner of the lot at that time, have become vested in her.   Whatever rights he would have, if still living and owning and occupying the lot, she has.   Whether or not the fact that he orally assented to Dr. Goerke's location of the line would effect her title and right of possession to all the land occupied by the building is a question we need not discuss, for the learned judge refused to find the fact.

We come now to what we conceive to be the controlling question in the case.   The testimony shows that Water street is part of a highway running through the borough which had existed before the time to which the memory of any witness extended.   It does not affirmatively appear that this highway was laid out by legal proceedings, or pursuant to formal dedication by the landowners.   We are not to be understood as saying that it was not established in either of these ways ; all that we say is that the evidence does not affirmatively show that it was so laid out.   Unquestionably it is a public highway ; but, so far as the testimony shows, the rights of the public rest on immemorial user, and in determining their extent we must be governed by the principles applying to the establishment of highways in that manner.   When a dedication to public use, and the opening of a street to public travel by the owner, are followed by its actual use by the public as a highway, the right in the public may become complete and absolute within a much shorter period than twenty-one years.   But when the right is dependent upon adverse user alone, it does not become complete until the expiration of that period : Commonwealth v. Llewellyn, 14 Pa. Superior Ct. 214.   In the latter case the user must be adverse, uninterrupted, and exclusive of any proprietary right of the former owner: 2 Dillon's Mun. Corp. (4th ed.) sec. 637 ; Weiss v. South Bethlehem, 136 Pa. 294, at p. 305.
" The use which will establish such a right must be defined, uniform adverse, and under claim of right, and must have continued for twenty-one years:" Commonwealth v. Phila. & Reading R. R. Co., 135 Pa. 256.   See also Root v. Commonwealth, 98 Pa. 170, and Irwin v. Dixion, 50 U. S. 10, as to the effect of a permissive use by the public concurrently with a use by the landowner for private purposes.   A street railway company

purchased a lot of land in 1857, upon a portion of which it laid its tracks. The public was permitted to walk and drive over a portion of the land along the track, but the company also used the lot for the purpose of storing rails and other articles upon it and never ceased to assert its right to use and occupy the lot for its own purposes. In disposing of the claim that the public had acquired a right of way by user the court said, that to hold that, because the public were also allowed to make use of the lot for a short cut across between the two avenues, the plaintiff thereby lost its ownership so as to forfeit its right to have damages when it was taken by the city for use as a park would be to maintain a very startling proposition, not sustained by authority and very oppressive in its results. " The facts necessary to establish a dedication do not exist in the case, and it is incredible that a right by adverse user could be acquired when during the entire period the plaintiff was in full actual possession and constant daily use of the lot for its own purposes :" Frankford, etc., Ry. Co. v. Philadelphia, 175 Pa. 120. These remarks relative to the exclusiveness of the use by the public, as an essential to the establishment of a highway by adverse user alone, are pertinent here, and for a stronger reason as will be seen later. Where the right to a public highway is acquired by adverse user, an important element in determining the width thereof is the *recognition of the limits of the way by the owners* whose lands front thereon, as indicated by the monuments and fences which they themselves place upon the ground, and the lines which they fix for the same in making conveyances of their property :" Commonwealth v. Llewellyn, supra. No conveyances were offered in evidence in the present case from which it can be inferred that the lot owners, including the defendant's predecessors in title, recognized the Goerke line as the true line of the street. On the contrary, Joseph Shultz, the executor of Emanuel Fishel who was the defendant's predecessor in title, testified without objection as follows : " These properties are deeded clear to the river from a certain point on back in the alley, clear to the river. This road on this is a part of the property. And I don't know that it is fixed on these deeds. I don't think it is. It wasn't a fixed place on the deeds I had, anyway, that I deeded over to Mr. Steiner. These properties all

run to the river." It is claimed that the Goerke line was located on the street line as indicated by buildings and fences. This is denied by the defendant, and even the testimony of the plaintiff's witnesses does not clearly establish the fact. Aaron Evans testified : " The old Steiner house, that is the house, stood on the line. That is the way the old house stood, which there are quite a number of porches along the street that is over the line." Again he said, " the porch extends over the line like there is a number of buildings along there." J. W. Kese testified to the same effect. Another witness testified, in substance, that, while a majority of the lot owners had set their fences back to the Goerke line, others had not, also that some had yards in front. True, these witnesses say in effect that the defendant's house is in the street, but this conclusion is based on the assumption, that, before it was built, the public had acquired or asserted an easement of way over the land occupied by it, which is the very matter in dispute. We have not overlooked the learned judge's finding of fact " that the line was run in accordance with what was estimated at that time by most of the property owners to be the line of the street; " nor do we say that evidence of reputation was inadmissible. We think it clear, however, that this alone was not sufficient to establish the fact that the true and lawful established line of the highway in front of the defendant's premises was where it was reputed to be ; and it is to be borne in mind that it is not within our province to decide as to the extent of the rights acquired by the public as against other landowners. How can it be said that the public has acquired a right of way over this two feet ten inches and a half of the defendant's lot by adverse user for a period of time which extends back beyond the memory of the oldest witness called in the case, when, during the same period, the land in dispute has been in the actual and exclusive occupancy of the defendant and her predecessors in title ? Granting that her house was one thing, and that her balcony and porch, underneath the same roof and supported by the same joists and foundations, constituted another and distinct thing, upon what principle can it be said that the public acquired rights by adverse user as to the ground upon which the latter stood immemorially, which it would not have acquired if these had been en-

closed ?    These questions have not been satisfactorily answered.
Certainly, the exclusion of the public from this part of the
land was as complete as if the house had been built originally
as it is now.    For present purposes, unqualified assent may be
given to the proposition that neither adverse nor permissive
use by the defendant and her predecessors in title for any
length of time, no matter how great, of a portion of the high-
way can bar the right of the public to the use and enjoyment
of the whole width.    See Commonwealth v. Moorehead, 118 Pa.
344, and cases there cited.    But before the legal principle in-
volved in the proposition can be invoked, it must be established
that a portion of the land which she is required to surrender
to the public was at some time a part of the highway.    Here
we think the proof fails.    It is certainly not of that clear and
convincing character that is required to sustain the jurisdiction
of a court of equity to compel the defendant to surrender to
the public possession of land that she and her predecessors in
title have had actual and exclusive possession of as long as any
one can remember.

Decree reversed and bill dismissed at the cost of the plain-
tiff.