## Philadelphia Tapestry Mills, Inc., et al., v. Philadelphia Storage Battery Company, Inc., et al.

*Samuel W. Cooper*, for plaintiffs; *C. J. Hepburn*, for defendants.

STERN, P. J., May 26, 1928.—This is a bill in equity for an injunction to restrain the defendants from erecting a building in the bed of what is alleged to be a street of the City of Philadelphia, and to order the defendants to remove a fence erected by them across said alleged street. The pleadings consist of the bill of complaint, answer and plaintiffs' reply to new matter set forth in the answer. The issues raised are as to whether the land upon which the building is to be erected by the defendants has become a public street in which the plaintiffs have any rights, and whether, if they have such rights, they are barred from asserting them by coming into equity with unclean hands, and whether, in any event, they have any standing in the case as private litigants.

The court makes the following

## Findings of fact.

1. The plaintiff, Baxter, Kelly and Faust, Incorporated, by deeds from Ellen Reed, dated Sept. 22, 1910, recorded W. S. V. 1384, page 147, and from John M. Kennedy, Jr., dated Nov. 3, 1911, recorded W. S. V. 1574, page 81, became, and now is, the owner of the property situated on the south side of Tioga Street, in the 33rd Ward of the City of Philadelphia, extending from the point of intersection of the easterly side line of "C" Street, as plotted on the city plan, with the southerly side line of Tioga Street, easterly to Arbor Street a distance of 132 feet, and in depth southerly of that width along "C" Street and along Arbor Street 250 feet to the line of the property of the defendant, Philadelphia Storage Battery Company.

2. The plaintiff, Philadelphia Tapestry Mills, Incorporated, by deed from Connecting Railway Company, dated Dec. 30, 1915, recorded E. L. T. 533, page 579, became, and now is, the owner of the property situated on the south side of Tioga Street, extending from the point of intersection of the westerly side line of "C" Street, as plotted on the city plan, with the southerly side line of Tioga Street, westerly to the line of Fairhill Railroad Company, a distance of 195 feet, and in depth southerly of that width along "C" Street and along the line of Fairhill Railroad Company 250 feet to the line of the property of the defendant, Philadelphia Storage Battery Company.

3. The defendant, Philadelphia Storage Battery Company, by deeds from Ellen Reed, dated May 12, 1909, recorded W. S. V. 1101, page 487, and from John M. Kennedy, Jr., dated July 1, 1910, recorded W. S. V. 1344, page 217, became, and now is, the owner of the property situated on the north side of Ontario Street, extending from the point of intersection of the easterly side line of "C" Street, as plotted on the city plan, with the northerly side line of Ontario Street, easterly to Arbor Street, a distance of 132 feet, and in depth northerly of that width along "C" Street and along Arbor Street 250 feet to the line of the property of the plaintiff, Baxter, Kelly and Faust, Incorporated.

4. The defendant, Philadelphia Storage Battery Company, by deeds from Connecting Railway Company, dated Sept. 23, 1913, and May 28, 1926, and recorded, respectively, E. L. T. 237, page 574, and J. M. H. 2331, page 368, became, and now is, the owner of the property situated on the north side of Ontario Street, extending from the point of intersection of the westerly side line of "C" Street, as plotted on the city plan, with the northerly side line of Ontario Street, westerly to the line of Fairhill Railroad Company, a distance of 230 feet, and in depth northerly of that width along "C" Street and along the line of Fairhill Railroad Company 250 feet to the line of the property of the plaintiff, Philadelphia Tapestry Mills, Incorporated.

5. The said property of the plaintiff, Baxter, Kelly and Faust, Incorporated, abuts upon and is bounded on two of its sides by open and paved public streets of the City of Philadelphia, namely, Tioga Street, with a frontage thereon of 132 feet, and Arbor Street, with a frontage thereon of 250 feet.

6. The said property of the plaintiff, Philadelphia Tapestry Mills, Incorporated, abuts upon and is bounded on its northerly side by Tioga Street, an open and paved street of the City of Philadelphia, with a frontage thereon of 195 feet. It has its only entrance (other than a railroad siding) at its northwest corner on Tioga Street, approximately 50 feet from Rosehill Street. The rest of the property is enclosed on Tioga Street and along the line of "C" Street, as plotted, by a board fence without openings.

7. The said property of the plaintiff, Philadelphia Tapestry Mills, Incorporated, is used by the said plaintiff only for the storage of coal. It contains

a siding from the railroad on the west, with coal pockets and a watchman's shed, and no other improvements. Aside from the above, it is an open lot.

8. The said property of the plaintiff, Baxter, Kelly and Faust, Incorporated, when conveyed to them, included a sidewalk and curb the whole length of the property of 250 feet on "C" Street, which sidewalk and curb had been constructed by John M. Kennedy, Jr., who had owned the said property and had conveyed the westerly part of it to Ellen Reed (the said plaintiff's grantor) by deed dated Sept. 22, 1910, recorded W. S. V. 1351, page 303.

9. In and by deeds from John M. Kennedy, Jr., dated May 17, 1927, recorded J. M. H. 2498, page 557, and from Connecting Railway Company et al., dated June 28, 1927, recorded J. M. H. 2515, page 578, the said grantors purported to convey to the defendant.land including that lying within the bed of "C" Street, between its easterly and westerly side lines, as plotted, from the northerly side of Ontario Street to a point 250 feet northerly therefrom, and also the easterly half of the bed of "C" Street, as plotted, from the southerly side of Tioga Street to a point 250 feet southerly therefrom.

10. On Nov. 10, 1926, the defendant, Philadelphia Storage Battery Company, erected a fence across "C" Street at a point 250 feet north of the northerly side line of Ontario Street where the said defendant's properties join the lines of the properties of the plaintiffs, and the defendant has completely blocked off the said "C" Street to the south of said fence from the use of the plaintiffs and the public, and the defendant claims that the bed of the said "C" Street to the south of said fence belongs to it.

11. The defendant, Philadelphia Storage Battery Company, on March 21, 1927, entered into a written agreement with Stewart Bros. Company, construction engineers, as contractor, providing for the erection by the latter for it of a building as an addition to its plant upon the north side of Ontario Street upon and over the land comprised within the lines of "C" Street, as plotted on the city plan, to the south of the fence hereinbefore referred to, said construction being designed to connect and consolidate its two factory buildings situated on the easterly and westerly side lines of said "C" Street, as plotted; and at the time the bill in this suit was served upon it, it was preparing to proceed with the erection of the same. The proposed addition was planned to extend northwardly from the northerly side line of Ontario Street to a point about 33 feet southwardly from the northerly party-line of said defendant, all of it being upon that part of the land within the lines of the said "C" Street, as plotted, which lies within and between the boundary-lines of the defendant's said properties.

12. The consent of the public authorities of the City of Philadelphia to the erection of the said building was duly given, the plans for same being duly approved by the Bureau of Building Inspection of the Department of Public Safety of the City of Philadelphia, and a permit for the construction thereof being duly issued under date of April 13, 1927, by the said bureau, with the consent and approval of the City Solicitor, with an order for survey by the Bureau of Surveys of the Department of Public Works, the defendant entering into an agreement with the City of Philadelphia, said agreement being secured by bond filed by the defendant, to remove at its own expense the building to be erected by it if and when the Council of the City of Philadelphia by ordinance should at any time thereafter open "C" Street for public use.

13. The said "C" Street, between Ontario and Tioga Streets, was formally placed upon the plan of streets of the City of Philadelphia on July 1, 1843, and has remained on the city plan since that date, but no legal proceedings

for the opening thereof have ever been had, nor has it ever been opened by any act of the public authorities.

14. By Ordinance of the City Councils passed in 1903, Ontario Street, including the intersection of Ontario and "C" Streets (but not north of the northerly side line of Ontario Street), was paved by, and at the expense of, the city up to the curb-lines of Ontario Street. By Ordinance of City Councils passed in 1913, Tioga Street, including the intersection of Tioga and "C" Streets (but not south of the southerly side line of Tioga Street), was paved by, and at the expense of, the city up to the curb-lines of Tioga Street.

15. Signs designating the said alleged street as "C" Street were placed on the buildings at the corner of Ontario and the corner of Tioga Streets at a time which is not disclosed by the testimony, but there is no evidence as to who placed said signs there or by what authority.

16. Since the time when the said "C" Street was placed on the city plan as aforesaid, no taxes have been assessed on the land constituting the bed of the said "C" Street from Ontario to Tioga Streets as a separate property, but there is no evidence as to whether or not the land constituting the bed of said alleged street was assessed for taxes as part of adjoining tracts.

17. The said "C" Street between Ontario and Tioga Streets has never been graded by the city, no city improvements have ever been made therein, and there has never been any expenditure by the public authorities therein or thereon.

18. The deeds to the properties of the parties hereto on the line of the said "C" Street between Ontario and Tioga Streets describe the same as situated on the said "C" Street. The first mention of said "C" Street appears in the deed of John A. Hagan to Active Land Association, dated Dec. 5, 1889, recorded G. G. P. 589, page 80, and in this deed the properties lying on "C" Street are described as situated on the easterly side of "C" Street or the westerly side of "C" Street, as the case may be. In the deed from Active Land Association to John A. Hagan dated Dec. 31, 1890, recorded T. G. 176, page 374, a similar description appears. In the deed of John M. Kennedy, Jr., to the Real Estate Title Insurance and Trust Company, dated July 29, 1892, recorded T. G. 217, page 256, the property conveyed is described as beginning at the point of intersection of the middle line of "C" Street (50 feet wide) and Tioga Street, and as returning to a point in the middle line of "C" Street and thence along the middle line of "C" Street to the point of beginning. The deed of the Real Estate Title Insurance and Trust Company to the Fairhill Railroad Company, dated June 22, 1893, recorded T. G. 350, page 81, employs a similar description.

19. It does not appear from the evidence that any sales of lots whatsoever have ever been made under or by or with reference to or in accordance with the plan of lots of Active Land Association, made by George F. Webster, District Surveyor, under date of Nov. 13, 1888, except solely as included in and covered by the deed from John A. Hagan to Active Land Association, dated Dec. 5, 1889, above referred to, and the deed from Active Land Association to John A. Hagan, dated Dec. 31, 1890, above referred to.

20. From sometime prior to about 1896 or 1897 (not definitely fixed by the evidence), the greater part of the land bounded by Ontario Street on the south, Tioga Street on the north, "D" Street on the east, and what is now the line of the Fairhill Railroad on the west, was occupied by a brickyard. The brickyard occupied all of the land between Ontario and Tioga Streets from a point about 50 feet west of "D" Street to a point a short distance to the east of the line of the railroad, or Rosehill Street. The land within the

lines of "C" Street," as plotted, between Ontario and Tioga Streets, was occupied by and included within the brickyard. The brickyard remained there until about the year 1906 or 1907, when it was moved away.

21. The entrance to the brickyard from Ontario Street, which was by a gate, was on the north side of Ontario Street at a point not definitely fixed by the evidence, but apparently about opposite to the northern end of "C" Street" as opened to the south of Ontario Street. The evidence does not definitely fix the location of the entrance to the brickyard from Tioga Street.

22. The gate which marked the entrance to the brickyard from Ontario Street remained approximately a year after the brickyard was moved away—shortly before the first building of the Philadelphia Storage Battery Company was erected. This building which was erected on the north side of Ontario Street, 20 feet east of the easterly side line of "C" Street, as plotted, was commenced in May, 1909, and completed about September, 1909, and between the time of the removal of the brickyard and the erection of said building of the Philadelphia Storage Battery Company the ground remained in substantially the same condition as before. This building was the first building erected on the entire tract between Ontario and Tioga Streets, between "D" Street on the east and the railroad on the west.

23. Immediately prior to the erection of said building of the defendant in 1909, the entire tract between Ontario and Tioga Streets, "D" Street and the railroad, was an open lot or field, with uneven surface, overgrown with grass and weeds, with scattered mounds or hillocks—the result of the dumping of dirt, refuse and trash—and with holes or depressions apparently the remains of pits from which clay had been dug.

24. At the said time, that is, in 1909, the plotted line of "C" Street, between Ontario and Tioga Streets, was distinguished on the ground only by winding and irregular wagon tracks, but not by any graded or clearly defined pathway.

25. At the time Tioga Street was graded, it was cut through below the grade of the land to the south, leaving a bank along the southerly side line of Tioga Street and across the end of "C" Street, as plotted, about three or four feet in height, but with enough slope to allow wagons to pass over it in places. This bank remained there until the first building of the plaintiff, Baxter, Kelly and Faust, Incorporated, was erected in 1910, at which time it was cut through for a width of 20 or 25 feet to permit the laying of the sidewalk alongside said plaintiff's building.

26. There was no defined nor uniform nor fairly continuous user of the said "C" Street, between Ontario and Tioga Streets, as a public street at any time prior to the year 1909. After 1909 or 1910 there was a more or less definite and regular user thereof by the public for pedestrian and vehicular traffic.

27. Neither of the plaintiffs has either averred or proved that it will suffer, through the closing of the alleged street by the defendant, any substantial or irreparable special injury, separable from and in addition to that which inconveniences the general public.

28. Since at least 1920 to the present time, the plaintiff, Baxter, Kelly and Faust, Incorporated, has used a large part of the land lying within the lines of "C" Street, as plotted on the city plan, adjoining its factory building, for the storage of coal for use in its plant. At or about the time of the filing of the bill in this suit, it maintained within the said lines of the said alleged street a coal pile abutting upon and piled against the wooden fence along the line of the property of the plaintiff, Philadelphia Tapestry Mills, Incorporated (the westerly side line of said "C" Street), commencing at a point about

65 feet south of Tioga Street and extending about 155 feet in length, with an average height of about 15 feet, and an average width of about 34 feet, but at one point extending to within 12 feet of the wall of the building of the plaintiff, Baxter, Kelly and Faust, Incorporated, on the easterly side line of said "C" Street.

29. The said use of the said bed of "C" Street by the plaintiff, Baxter, Kelly and Faust, Incorporated, has been without any expressed objection on the part of the plaintiff, Philadelphia Tapestry Mills, Incorporated.

30. Extending from the northerly end of said coal pile to the southerly side line of Tioga Street, a distance of about 65 feet, there has existed for several years, and now exists, a dirt pile averaging about four feet in height and with an average width of about 33 feet.

31. Several months prior to the filing of the bill in this suit, the plaintiff, Baxter, Kelly and Faust, Incorporated, erected, and has ever since maintained and still maintains, a garage building within the lines of the said "C" Street, as plotted on the city plan, and opposite the southerly end of the property of the said plaintiff. Said garage was built by it squarely across the centre line of said "C" Street at a point about 230 feet south from the southerly side line of Tioga Street, and is of a length (from east to west and across the line of said "C" Street) 24 feet 4 inches, and of a width (from north to south along the line of said "C" Street) 16 feet 2 inches, and of a height of 9 feet.

32. It does not appear from the evidence that the plaintiff, Philadelphia Tapestry Mills, Incorporated, has ever used the said "C" Street, between Tioga and Ontario Streets, for traffic or any other purpose whatever.

### Discussion.

The plaintiffs in this case base their rights upon the theory that "C" Street, between Ontario and Tioga Streets, has become a public street of the City of Philadelphia, which claim is denied by the defendant.

The methods by which a street or highway may come into existence are discussed and clearly defined in the opinion of Mr. Justice Kephart in Milford Borough v. Burnett, 288 Pa. 434. These methods are either statutory, or by dedication, express or implied, or by prescription.

In the present case, it is admitted that the street here in question has never been opened by statutory proceedings.

As far as prescription is concerned, it is stated in Com. v. Phila. & Reading R. R. Co., 135 Pa. 256, 271, that "the use which will establish such a right must be defined, uniform, adverse and under claim of right, and must have continued for twenty-one years." And in Washington Borough v. Steiner, 25 Pa. Superior Ct. 392, 399, it is said: "When a dedication to public use and the opening of a street to public travel by the owner are followed by its actual use by the public as a highway, the right in the public may become complete and absolute within a much shorter period than twenty-one years. But when the right is dependent upon adverse user alone, it does not become complete until the expiration of that period: Com. v. Llewellyn, 14 Pa. Superior Ct. 214. In the latter case, the user must be adverse, uninterrupted and exclusive of any proprietary right of the former owner: 2 Dillon's Mun. Corp. (4th ed.), § 637; Weiss v. South Bethlehem, 136 Pa. 294, at page 305." The law governing this situation is the same as in every other case where a prescriptive adverse right is claimed; it can be acquired only by exercise of the alleged right for a term equal to the statutory period of limitation. In the present case, however, the plaintiffs were unable to prove an adverse

user of the bed of the so-called street for a period of twenty-one years. It is unnecessary to discuss all of the evidence in the case, but the chancellor's findings of fact on that evidence are to the effect that until about 1909 or 1910 (after the brickyard had been removed) there was no uniform or fairly continuous user which would start the running of the twenty-one-year period; until that time there may have been an occasional or sporadic passing through the brickyard, but certainly during that time there was no defined or regular path along "C" Street, and a mere rambling use or the mere existence of zigzag paths, not entirely within the lines of the alleged highway in question, is insufficient to establish such a highway: Com. v. Phila. & Reading R. R. Co., 135 Pa. 256, 271; Milford Borough v. Burnett, 288 Pa. 434, 441.

This brings us to the only remaining method of creating a street and the one upon which the plaintiffs rely in the present case, namely, by dedication and acceptance. Dedication may be either express or implied. An express dedication is stated in Milford Borough v. Burnett, 288 Pa. 434, 438, to be "a continuing offer of a piece of ground to a municipality for public travel. So far as it relates to a municipality, the offer continues (barring legislation) until revoked. Like all other offers, it must be accepted by the municipality for the purpose offered. . . . The acceptance may be express or implied. Implied acceptance may be indicated by some definite authoritative act of the municipality (citing cases), or by long-continued user by the public as a way (citing case), or a combination of municipal acts and public use (citing case)."

Where it is attempted to establish the existence of a street by dedication and acceptance, the user which constitutes or is evidential of the acceptance need not be for the statutory term of twenty-one years. That is to say, while, as against an owner's intention not to devote the land to the use of the public, there must be brought a continuous and adverse user for the period of limitation to give the public a prescriptive easement in his land; if an intention to set aside land to the public use be shown, a user on the part of the public is pursuant to the dedication, and will be sufficient evidence of a complete dedication and acceptance, even if continued for less than the statutory period. It has been held in many cases that where the owner has expressly or impliedly dedicated part of his land as and for a public street, the public may show its acceptance of the offer by a user of the dedicated street, and that user need not be for so long a time as twenty-one years. Thus, in Com. v. Shoemaker, 14 Pa. Superior Ct. 194, 203, it is said: "The mere dedication of a street to public use by the owner will not make it a public street unless it is accepted by the public, and, until there has been such an acceptance, an indictment will not lie for the obstruction of such a street. Such a street may, however, be accepted by public user, without the active intervention of the municipal authorities. Where such public user is in pursuance of a dedication by the owner, it requires a much less time to presume an acceptance by the public than where there has been a mere user without dedication." To the same effect are Washington Borough v. Steiner, 25 Pa. Superior Ct. 392; Com. v. Moorehead, 118 Pa. 344, 353; Kniss v. Duquesne Borough, 255 Pa. 417.

It is also true that where a dedication exists, it is not necessary that the acceptance of such dedication be by the expenditure of public money thereon or by any active intervention of the municipal authorities: Kniss v. Duquesne Borough, 255 Pa. 417; Fleck v. Collins, 28 Pa. Superior Ct. 443; Weida v. Hanover Township, 30 Pa. Superior Ct. 424. All that is necessary in order to establish an acceptance of the dedication is to prove a more or less general and continuous user on the part of the traveling public for some considerable

period of time, which, as above stated, need not be for the entire statutory period of limitation of twenty-one years. The plaintiffs in the present case have established that such user existed for about sixteen or seventeen years prior to the erection by the defendant of its fence, and, therefore, if such user rested upon a prior dedication, the plaintiffs would have succeeded in establishing that "C" Street, between Ontario and Tioga Streets, had become a public street.

The chancellor, however, is of opinion that no such dedication was proved. The plaintiffs rest their claim in regard to it on the fact that on Nov. 13, 1888, George S. Webster, Surveyor and Regulator of the 10th District, surveyed a plan of lots for the Active Land Association, to which association a large tract of land, including that here involved, was deeded by one John A. Hagan on Dec. 5, 1889 (deed recorded G. G. P. 589, page 80). The greater part of the same tract, and including all of the section involved in the present case, was reconveyed by the Active Land Association to the said John A. Hagan on Dec. 30, 1890 (deed recorded T. G. 176, page 374). In these deeds the lots and streets contained in the Webster survey were referred to as the basis of description of the conveyance. Of course, it is well established that, generally speaking, the sale of lots according to a plan which shows them to be on a street implies a grant or covenant to the purchaser that the street shall be forever open to the use of the public and operates as a dedication of the street to public use; the right passing to the purchaser is not the mere right that he may use the street, but that all persons may use it: Quicksall and Lee v. Philadelphia, 177 Pa. 301; Garvey v. Harbison-Walker Refractories Co., 213 Pa. 177; O'Donnell v. Pittsburgh, 234 Pa. 401; Chambersburg Shoe Manuf. Co. v. Cumberland Valley R. R. Co., 240 Pa. 519; Gailey v. Wilkinsburg Real Estate Trust Co., 283 Pa. 381; Weida v. Hanover Township, 30 Pa. Superior Ct. 424. This principle does not apply, however, unless the street in question is created for the first time in the plan or survey under which the lots are sold. If the plan and the deeds conveying the lots refer to a street which is already plotted on the city plan, but unopened, such reference is considered to be merely by way of geographical description, and not as constituting a dedication or as indicating an intention on the part of the grantor to dedicate the bed of the street by thus referring to it.

Thus, in Quicksall and Lee v. The City of Philadelphia, 177 Pa. 301, 304, it is said that "the distinction between the sale of lots according to a plan made by the owner upon which streets are laid out and the mere reference in aid of description to streets projected by the municipality is manifest. In the former case, the inference of dedication arises; in the latter it does not." And in Henderson v. Young, 260 Pa. 334, 337, it is said that "the trial judge found, and in fact it was agreed between counsel at the trial, that Welsh never plotted or adopted the street in question as part of the development of his property; consequently, the conclusion of the trial judge that a reference to the street as a boundary conveyed no easement over it other than that which would follow as a result of the subsequent action of the city in opening it as plotted to public use is amply sustained by the authorities. The distinction between the case where the owner of land lays property out in lots abutting on a street of his creation, and one where he merely recognizes in his conveyance a street plotted by a municipality, is pointed out in Tesson v. Porter Co., 238 Pa. 504, where the earlier cases are fully reviewed." And in Gailey v. Wilkinsburg Real Estate Trust Co., 283 Pa. 381, 386, it is said that "the distinction in the creation of the two rights is narrow. When a sale is from a plan of lots laid out by the owner before adoption by the municipality or

before the land was incorporated as part of the municipality, the contractual right existing in all lot owners to all highways on the plan lives, regardless of any action by municipal authorities to abolish or change them. On the other hand, if the right accrues through sale of lots after the municipality has adopted the highways, or when an owner sells with reference to streets and alleys projected by the municipality, the easement is limited to a way of necessity, with all its impediments."

In other words, the general theory of the cases is that where one sells lots according to a plan on which he maps out a new street, there arises therefrom the implication of a dedication of the street, thereby creating a continuing offer to the municipality and to the traveling public to accept the dedication and thus create an actual highway. But where the owner refers to a street already plotted on the city plan but not opened, no such implication of dedication of the bed of the street arises; he is deemed to be referring to the line of the street merely as a geographical boundary, the same as if he had referred in his deed to a stream or other natural monument. Moreover, the fact that the street is on the city plan is constructive notice thereof to the grantee as well as to the grantor, and the grantee takes with knowledge of all of the results legally flowing therefrom, namely, that the municipality may subsequently open the street as a public street or may refrain from so doing.

In the present case, "C" Street, between Tioga and Ontario Streets, was on the city plan since 1843, and, therefore, under the authorities cited and many others that might be given, the reference to such street in the deeds to and from the Active Land Association did not amount to a dedication thereof, and, therefore, there was nothing that was subject to an acceptance either by the municipality as such or by the user thereof by the general public.

There is another reason why the doctrine does not apply here as to lots sold in pursuance of a general plan, in that there is no evidence in the case that any lots were sold by the Active Land Association under and in accordance with the Webster survey. As has already been pointed out, the Active Land Association reconveyed to Hagan almost all the land which had been conveyed to it by him the year before, but whether or not the portion that was not reconveyed represented lots that had been sold does not appear; indeed, that any such sales were made appears to be negatived by the fact that in the deed of reconveyance it is stated that all of the lots were being reconveyed except those which had been reserved or kept by the stockholders of the association. Be this as it may, however, certainly the properties involved in the present controversy were not sold in accordance with the Webster survey, since these were conveyed subsequently as large independent tracts and without reference at all to the lots as mapped out on the Webster plan. The doctrine of implied dedication arises, at best, only where the lots have actually been sold in pursuance of the survey: Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Bell v. Pittsburgh Steel Co., 243 Pa. 83; Baltimore & Ohio R. R. Co. v. Wilson-Snyder Manuf. Co., 279 Pa. 219.

It thus appears that, viewed from every angle, there is nothing in the evidence from which any dedication can, under the law, be construed to have been made, and if there was no dedication, there could have been no acceptance of what was not dedicated. And since, as has already been pointed out, "C" Street, between Tioga and Ontario Streets, has never been opened by statutory proceedings, and no rights have been acquired thereto by prescription through twenty-one years' user, it follows that it has never become, by any method, a public street, but remains where it has been since 1843,

namely, a mere plotted street on the city plan. The only rights claimed by the plaintiffs being predicated on the theory of "C" Street being a public thoroughfare, it follows that they have not established their case.

Of course, the city may at any time open "C" Street, and if it does so the rights of the plaintiffs will immediately appertain thereto, and the defendant will be obliged to remove its fence and any buildings that it may hereafter construct therein without compensation paid to it because of the necessity of such removal. But the court must deal with the case as it now stands and not with what the situation may be if such action is ever taken by the city.

It is true that, even though, as has been shown, "C" Street, between Ontario and Tioga Streets, has never become a public street, it does not necessarily follow that the plaintiffs have no rights whatever over that part of the bed of the street, as plotted, which lies along the side of their respective properties. As pointed out in the eighteenth finding of fact, their deeds describe these properties as extending along the side of "C" Street, and it is undoubtedly the law that where there is a description of a property as bounded by a street plotted on the city plan but unopened, even though no dedication is effected thereby, the grantee does acquire, as against his grantor, an implied easement over the bed of the street immediately adjoining the property conveyed (unless circumstances attending the conveyance and description of the grant negative such implication), and if and when the street is thereafter actually opened the grantee's title "jumps" to the middle of the street: Hancock v. Philadelphia, 175 Pa. 124; Neely v. Philadelphia, 212 Pa. 551; Hawkes v. Philadelphia, 264 Pa. 346. The implied easement granted in such cases is of such a nature that if the city relinquishes or abandons its right to open the street by proper municipal action, the grantor must allow to the grantee a way of necessity if the property does not abut on other streets or highways of the city: Hawkes v. Philadelphia, 264 Pa. 346, 351, 352; Gailey v. Wilkinsburg Real Estate Trust Co., 283 Pa. 381, 386; Titusville Amusement Co. v. Titusville Iron Works Co., 286 Pa. 561, 571. What the law, therefore, provides in such a case is simply this: That while in the conveyance of a property bounded by a street plotted but unopened the grantor retains title to the bed of the street, he impliedly gives to his grantee an easement over the land of which the title is thus retained by him, thereby assuring to the grantee access to the property conveyed, and if the actual opening of the street never materializes, some other way of necessity must be granted if there is no other access available; this implied easement is only over the land belonging to the grantor and forming the bed of the plotted street adjoining the property conveyed, and is derived merely from an implied contract between the grantor and grantee; it does not extend over parts of the alleged street upon which the property conveyed does not actually abut, because the grantee knows as well as the grantor that the street is merely a plotted one and subject to future possible action or inaction by the municipality, over which the grantor has no control and as to which he can give no assurances. For this reason, as well as because there is no privity in their relationship (in the absence of a sale of lots under a general plan or survey), such limited easement right cannot be enforced in an action against prior grantees of the same or other grantors abutting on other parts of the street.

We come now to another aspect of the present case, and that is, that, as far as the plaintiff, Baxter, Kelly and Faust, Incorporated, is concerned, it cannot, in any event, succeeed in this action, because it does not come into equity with clean hands. The facts indicate that for several years this plaintiff has

maintained an extremely large coal pile in the bed of "C" Street, which in itself almost blocks off the entire passageway, and, more recently, has erected a garage property also in the bed of the street. It is impossible to understand how this plaintiff can seek to prevent the defendant from obstructing the alleged street after it itself has for a long period been doing exactly the same thing, and still continues so to do. Counsel for plaintiff, in their brief, cite the case of Delaware, Lackawanna & Western R. R. Co. v. Stroudsburg, Water Gap & Portland Street Ry. Co., 289 Pa. 131, to the effect that where a court of equity is appealed to for relief, it will not go outside the subject-matter of the controversy and make its interference depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against defendant or the relief which he demands. That case decided that the doctrine of the effect of coming into equity with unclean hands would not be applied to a railroad company which sought to enjoin a street railway company from condemning a portion of the former's right of way merely because of plaintiff's previous conduct in endeavoring to oust the defendant from land previously leased to it by the plaintiff and later sought to be condemned. The distinction, however, between the principle thus enunciated and the present case is clear. It is true, of course, that the doctrine of coming into equity with unclean hands as barring all right to relief does not apply to an uncleanliness arising from other transactions in no way connected with the subject-matter of the controversy before the court. In the present suit, however, the actions of the plaintiff, Baxter, Kelly and Faust, Incorporated, are directly related to the instant controversy; the acts done by this plaintiff are *in pari delicto* with those done by the defendant and which are now sought to be enjoined; it would be an absurdity to hold that a plaintiff should be granted relief in equity against the performance of an act exactly similar to that performed and still persisted in by himself.

And, finally, there is another reason why the plaintiffs, in the opinion of the chancellor, cannot succeed in their present action—a reason which applies to both plaintiffs alike—namely, that where the injury complained of is a public one and the right violated is a public right, an individual cannot maintain a suit for an injunction unless he suffers a special injury different from that suffered by the public at large. In such a case, the plaintiff must show an injury peculiar to himself, differing not merely in degree, but also in kind from that which is suffered by the general public: The Buck Mountain Coal Co. v. The Lehigh Coal and Navigation Co., 50 Pa. 91; Gold v. The City of Philadelphia, 115 Pa. 184; Hobson v. Philadelphia, 155 Pa. 131 (where it was held that a person was not entitled to recover damages from a city for the obstruction of a street in which he lived and did business, where the injury which he suffered was common to the public generally) ; Mint Realty Co. v. Wanamaker, 231 Pa. 277, 279 (where it was said that, "except as the appellant can show that in consequence of the projection it will suffer a special injury, separable from and in addition to that which inconveniences the general public, it can have no standing as a suitor to complain") ; Sagerson v. Nathan Realty Co., 281 Pa. 358; A. Wishart & Sons Co. v. Erie R. R. Co., 283 Pa. 100, 102 (where it was said that "it is clear that plaintiff is relying on the long use of the crossing (for more than twenty-one years) by the public to establish certain rights which it argues the railroad company cannot take away. If, by the evidence produced, appellant established the public nature of the 'road or way' which constituted the crossing, it thereby showed that the bill of complaint was improperly brought in its name to obtain the relief sought. There is no allegation or evidence that the injury to plaintiff

is peculiar in kind or differs more than in degree and extent from that sustained by the general public. Under these circumstances, the remedy for the obstruction of a public road, as in the case of any public nuisance, must be sought by the public authorities, either the attorney-general or district attorney"); Weihle *v.* Penna. R. R. Co., 8 Dist. R. 309; Seitz *v.* Lafayette Traction Co., 5 Pa. C. C. Reps. 469, 470 (where it was said that "one who has simply a common interest with all other citizens of a city in a public street is not in a position to ask a court of equity to enjoin the obstruction of it. A court of equity will not enjoin the obstruction of a public street at the suit of a private citizen who shows no personal injury. . . . If the injury is a common and public nuisance and there is no special damage to any citizen, relief should be obtained through the interposition of the attorney-general"); Cox *v.* The Philadelphia, Wilmington & Baltimore R. R. Co., 10 W. N. C. 552 (affirmed in Cox's Appeal, 11 W. N. C. 571). Indeed, the Act of May 3, 1927, P. L. 515, was intended to give to plaintiffs in certain cases private rights to enjoin encroachments upon public streets which they would not have had in the absence of such statute; this act, however, refers only to the special cases therein mentioned and is not applicable to the present case.

It is true that there is a line of authorities, examples of which are Garvey *v.* Harbison-Walker Refractories Co., 213 Pa. 177; O'Donnell *v.* Pittsburgh, 234 Pa. 401; Titusville Amusement Co. *v.* Titusville Iron Works Co., 286 Pa. 561, which holds that where there is a sale of lots according to a general plan which shows them to be on streets laid out by the grantor, each purchaser or lot-holder has a standing to object to any one obstructing such street—even, indeed, if he is not an abutter on the particular street in question; that is to say, the owner of any lot in the general plan may assert the public character of such a street and the right of the public to use it. But this principle is not applicable to the present case, because, as has been pointed out, there was no evidence of any sale of lots according to a general plan, and certainly none of the parties to this controversy was a purchaser of any lot under such a plan. The plaintiffs, therefore, are in no position other than that of any private person who seeks to enjoin the maintenance of an obstruction in what (as the plaintiffs allege) is a public street, and the authorities above cited indicate that they have no standing in such a case unless the inconvenience or damage suffered by them by the obstruction is not only greater in degree than that suffered by the public generally, but differs from it in kind. In the present case, no such peculiar or special damage is averred in the bill, nor sustained by any evidence.

For all of the reasons thus stated, the chancellor is of opinion that the plaintiffs are not entitled to the relief sought by them in the present case. It is not necessary to decide, and it is not intended to express herein any opinion in regard to the question, as to what title, if any, the defendant obtained to the bed of "C" Street by virtue of the deeds referred to in the ninth finding of fact.

## Conclusions of law.

1. The plaintiff, Baxter, Kelly and Faust, Incorporated, comes into court with unclean hands, and, therefore, is not entitled to relief in the present cause.

2. Suit to restrain encroachment upon a public highway may be maintained only by the public authorities, never by an individual, unless he shows that he will suffer substantial and irreparable special injury, differing in kind and not merely in degree from that which inconveniences the general public.

3. There being no allegation in the bill, nor evidence to the effect, that the plaintiffs have suffered, or will suffer, special injury, differing in kind

from that suffered by the general public, they cannot maintain the present action.

4. The mere plotting of streets upon a city plan vests in the public no right to use them for travel; proceedings to open are necessary before they become actual streets and before the exclusive possession of land owners can be interfered with.

5. Such plotted streets may, however, become actual highways merely by public user, but the only user which will effect that result must be defined, uniform, adverse and under claim of right, and must have continued uninterruptedly for twenty-one years.

6. A user for less than twenty-one years may, however, establish a street or highway where such use constitutes an acceptance of a prior dedication of the street, but to produce that result there must have been such a dedication, express or implied, by the owner of the land.

7. A dedication of a street does not result nor is to be implied from a sale of land as bounded by a street plotted on a city plan but not opened.

8. Where an owner of land lays out a plan of lots bounding on streets created under such plan, there is an implied dedication to the grantees and to the public generally of such streets, but no such dedication is effected by or to be implied from such action if lots are not actually sold by said owner under and in accordance with said plan.

9. Where an owner of land lays out a plan of lots to conform to a street located and plotted by a municipality but not opened, and no lots are sold by him abutting upon such plotted street until after the location of said street by the municipality on the city plan, the owner's plan of lots and any sale of lots by him thereunder do not amount to a dedication of such plotted street.

10. Neither of the plaintiffs has acquired, or now has, any right or easement in "C" Street, as plotted on the city plan, between Ontario and Tioga Streets, under or by reason of the plan of lots surveyed by George F. Webster, Surveyor and Regulator of the Tenth District, on Nov. 13, 1888, for the Active Land Association.

11. "C" Street, as plotted on the city plan, between Ontario and Tioga Streets, is not an open public street of the City of Philadelphia.

12. Where land is sold as bounded by a street plotted on a city plan but not opened, the grantee merely acquires, as against the grantor, an easement in the part of the bed of such plotted street lying alongside of the property conveyed. If the city fails to open the street or subsequently vacates or abandons it, the grantee may have a right, as against the grantor, to a way of necessity, which, however, arises only in case the land has no other way of access to the system of highways of the city.

13. The plaintiffs' bill should be dismissed.

The court, therefore, enters the following

### Decree.

And now, to wit, May 26, 1928, this cause having come on to be heard upon bill, answer, reply to new matter and proofs, upon consideration thereof it is ordered, adjudged and decreed:

1. That the bill be dismissed.

2. That the plaintiffs pay the costs of these proceedings.

The prothonotary will enter this decree *nisi* and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, either party may present to the court a form of final decree then to be entered.